# United States Tax Court

167 T.C. No. 6

HBM HOLDINGS COMPANY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos. 19735-23, 3881-24.                    Filed July 27, 2026.

————————

P is the parent of a consolidated group. Under I.R.C. § 381, P succeeded in a deemed liquidation under I.R.C. § 332 occurring on June 30, 2018, to net operating loss (NOL) carryovers of DRE, an entity now disregarded as separate from P. The P consolidated group was formed on July 1, 2018. P had no separate basis taxable income for its short tax year ending December 31, 2018, through the 2021 tax year. On returns for the short tax year and the 2020 and 2021 tax years, the P consolidated group claimed consolidated NOL (CNOL) deductions on the basis of the DRE NOL carryovers.

The parties filed Cross-Motions for Partial Summary Judgment concerning whether the CNOL deductions were allowed.

*Held*: DRE is a predecessor to P within the meaning of Treas. Reg. § 1.1502-1(f)(4), notwithstanding that the P consolidated group did not exist at the time of DRE's deemed liquidation.

*Held, further*, Treas. Reg. § 1.1502-1(f)(2)(i) does not apply to treat DRE's separate return years as not separate return limitation years (SRLY).

**Served 07/27/26**

*Held, further*, the original members of the P consolidated group do not constitute an SRLY subgroup within the meaning of Treas. Reg. § 1.1502-1(f)(2)(i).

*Held, further*, the P consolidated group is not entitled to CNOL deductions for the 2018, 2020, and 2021 tax years on the basis of the DRE NOL carryovers.

————

*David D. Aughtry*, *Robert J. Browning*, *Colleen C. Essid*, *Charles E. Hodges II*, *Patrick J. McCann, Jr.*, and *Andrew D. Mullendore*, for petitioner.

*Laura L. Bates*, *Rae L. Ensor*, *Michael K. Foster II*, *Lisa P. Lafferty*, *William T. Maule*, *Jamie M. Powers*, and *Diana N. Wells*, for respondent.

OPINION

JENKINS, *Judge*: Both parties in these two consolidated cases have moved for partial summary judgment concerning certain consolidated net operating loss (CNOL) deductions claimed on consolidated federal income tax returns for the 2018, 2020, and 2021 tax years (years at issue).[1] Respondent's Motion requests that this Court sustain the denial of those deductions, and petitioner's Motion requests that this Court rule that they are allowed. For the reasons discussed herein, this Court will grant respondent's Motion and deny petitioner's Motion.

*Background*

Petitioner, HBM Holdings Co. (HBM), is a Missouri corporation that was formed as a holding company. When petitioner filed its Petitions, its principal place of business was Missouri. For the years at issue, HBM was the common parent of an affiliated group that filed consolidated Forms 1120, U.S. Corporation Income Tax Return (HBM group).

---

[1] These cases are also consolidated with Docket Nos. 16438-23, 4397-24, and 6239-25. The Motions decided in this Opinion are not before the Court in those cases.

The HBM group also included Mississippi Lime Co. (MLCO), a Missouri corporation. In 2012, when MLCO was an S corporation within the meaning of section 1361,[2] it acquired Delavau Holdings, LLC (Delavau), a Delaware limited liability company that was taxed as a corporation. At that time, Delavau had accumulated approximately $78 million of net operating loss (NOL) carryovers and was treated as a loss corporation under section 382.

In 2014, HBM was incorporated pursuant to a reorganization under section 368(a)(1)(F) (F reorganization), and an election was made under section 1362 to treat it as an S corporation as of the date of incorporation. As part of the F reorganization, MLCO became a directly wholly owned subsidiary of HBM, and an election was made under section 1361(b)(3)(B)(ii) to treat it as a qualified subchapter S subsidiary (QSSS). MLCO distributed 100% of Delavau's stock to HBM, so that Delavau was directly wholly owned by HBM as well.

Effective July 1, 2018, HBM ceased to be an S corporation pursuant to a revocation of its S corporation election filed pursuant to section 1362(d)(1)(A). Accordingly, the QSSS status of four of its subsidiaries—MLCO, Aerofil Technologies (Aerofil), FLCO, Inc. (FLCO), and Schafer Industries, Inc. (Schafer)—ceased, effective July 1, 2018. In addition, Delavau filed an entity classification election pursuant to Treasury Regulation § 301.7701-3(c) to be disregarded as separate from HBM, effective July 1, 2018. Under Treasury Regulation § 301.7701-3(g)(1)(iii), this election caused Delavau to be deemed to liquidate into HBM at the close of business on June 30, 2018. The parties agree that sections 332 and 381 apply with respect to this deemed liquidation. Under section 381, HBM succeeded to, and was required to take into account, Delavau's NOL carryovers, which amounted to $108 million at the time of liquidation. The parties agree that the deemed liquidation was not a reverse acquisition within the meaning of Treasury Regulation § 1.1502-1(f)(3).

Beginning with the short tax year running from July 1 to December 31, 2018, HBM filed a consolidated federal income tax return with the includible members of the HBM group. The initial members of the HBM group were HBM, MLCO, Aerofil, FLCO, and Schafer

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Subchapter S of chapter 1 of the Code governs the tax treatment of S corporations.

(collectively, Founding Members). At no time did the HBM group include Delavau. For the short tax year and all of the following tax years through the 2021 tax year, HBM had no taxable income on a separate entity basis.

On its consolidated returns, the group claimed CNOL deductions of $13,546,306 for the short tax year ending December 31, 2018, $14,970,260 for the 2020 tax year, and either $1,162,348 or $1,092,709[3] for the 2021 tax year. These CNOL deductions were attributable to Delavau's preliquidation NOL carryovers. For the same tax years, the group reported aggregate taxable income, before applying the CNOL deductions, of $13,546,306, $46,827,513, and $89,917,245, respectively.

Respondent denied in full the CNOL deductions for the short tax year ending December 31, 2018, and for the 2020 tax year, in addition to denying $1,092,709 of the CNOL deduction for the 2021 tax year. The stated reason for the denials was that the separate return limitation year (SRLY) rules in the consolidated return regulations bar the application of the Delavau NOL carryovers to offset the income of the HBM group.

## *Discussion*

### I. *Standard for Partial Summary Judgment*

The purpose of summary judgment is "to expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party "may move for summary judgment on . . . any part of the legal issues in controversy." Rule 121(a)(1). The party moving for summary judgment must show that there is no genuine dispute of any material fact and that the moving party is entitled to judgment as a matter of law. Rule 121(a)(2). In these cases, the parties agree that there is no dispute of material fact and that judgment may be rendered as a matter of law.

### II. *Overview of the CNOL and the SRLY Rules*

An affiliated group filing a consolidated return, i.e., a consolidated group, is generally permitted a CNOL deduction for a

---

[3] The parties have stipulated the former number but also adduced a Notice of Deficiency that reports that the latter number was claimed without explaining the discrepancy or why the IRS would not have disallowed the entirety of the amount claimed. However, the discrepancy is irrelevant to the Court's consideration.

consolidated return year in the amount of the aggregate NOL carryovers and carrybacks to the year. Treas. Reg. §§ 1.1502-1(h), 1.1502-21(a)(1). The aggregate NOL carryovers and carrybacks consist of CNOLs of the consolidated group and NOLs of members arising in separate return years (SRYs). Treas. Reg. § 1.1502-21(a)(1). A reference to a member may include a reference to the member's predecessor or successor as the context requires. *See id.* para. (f)(1). However, in general, a member's NOL carrybacks and carryovers arising in an SRLY are included in CNOL deductions only to the extent of the group's consolidated taxable income for all consolidated return years of the consolidated group attributable to that member. *See id.* para. (c)(1)(i).[4] Therefore, a member's SRLY NOLs generally cannot apply to offset the taxable income of other group members.

An exception to this limitation applies under the SRLY subgroup rules, under which the principles of the limitation apply to an SRLY subgroup and not separately to its members. *See id.* subpara. (2). Accordingly, the aggregate amounts of taxable income attributable to all of the members of an SRLY subgroup are taken into account in determining the NOL carryovers and carrybacks taken into account in CNOL deductions. *See id.*

An SRLY is "any [SRY] of a member or of a predecessor of a member," unless an exception applies. Treas. Reg. § 1.1502-1(f)(1). An SRY is "a taxable year of a corporation for which it files a separate return or for which it joins in the filing of a consolidated return by another group." *Id.* para. (e). However, under the "lonely parent rule," an SRY of "the corporation which is the common parent for the consolidated return year to which the tax attribute is to be carried" is not an SRLY. *Id.* para. (f)(2)(i). There are two exceptions to the lonely parent rule, which respondent acknowledges are not relevant here. The lonely parent rule allows the common parent to apply NOL carrybacks or carryovers from its SRYs without regard to the SRLY NOL limitation.

---

[4] An exception to this limitation applies in the case of an overlap with section 382. *See* Treas. Reg. § 1.1502-21(c)(1)(i), (g). An overlap exists if a corporation becomes a member of a consolidated group within six months of the change date of an ownership change giving rise to a section 382(a) limitation with respect to that carryover. Treas. Reg. § 1.1502-21(g)(2)(ii)(A). Section 382 applies to the Delavau NOLs arising before the 2012 ownership change upon Delavau's acquisition by MLCO, and HBM did not become a member of the HBM group until 2018. Accordingly, the exception does not apply.

III.    *Summary of the Parties' Positions*

The central issue raised by the Cross-Motions for Partial Summary Judgment is whether the lonely parent rule applies with respect to the Delavau NOL carryovers. There is also a secondary issue of whether HBM and the other Founding Members constitute an SRLY subgroup within the meaning of Treasury Regulation § 1.1502-21(c)(2)(i).

Respondent acknowledges that the Delavau NOL carryovers can offset any taxable income of HBM on a separate entity basis, subject to limitations. *See id.* para. (f)(1). However, respondent argues that the Delavau NOL carryovers cannot be applied to offset the consolidated income of the HBM group because they arose in SRLYs. According to respondent, the lonely parent rule does not apply with respect to the Delavau SRYs because Delavau is a predecessor of HBM, and the lonely parent rule does not apply with respect to the SRYs of predecessors.

Petitioner argues that the Delavau NOL carryovers did not arise in SRLYs because of the lonely parent rule. Petitioner claims HBM was treated as inheriting Delavau's tax attributes, including its NOL carryovers, when Delavau was deemed to liquidate. Given that HBM is the common parent of the HBM group, petitioner argues that the lonely parent rule exempts the SRYs that HBM inherited from Delavau from being classified as SRLYs. Petitioner disagrees with respondent's position that Delavau was a predecessor of HBM within the meaning of Treasury Regulation § 1.1502-1.

Alternatively, petitioner claims that HBM and the other Founding Members constitute an SRLY subgroup. According to petitioner, this would allow HBM to apply the Delavau NOL carryovers to offset the income of the other Founding Members.

IV.    *Analysis*

For the reasons discussed herein, this Court concludes that Delavau is a predecessor of HBM, such that the lonely parent rule does not apply to exclude its SRYs from SRLYs. Furthermore, this Court concludes that the Founding Members do not constitute an SRLY subgroup because they were never previously part of another affiliated group together. For these reasons, this Court finds that petitioner's CNOL deductions based on Delavau's NOL carryovers were properly disallowed.

A.      *Treatment of Delavau's NOL Carryovers Under Section 381*

The parties agree that, under section 381, the 2018 deemed liquidation of Delavau into HBM resulted in HBM's succeeding to and taking into account Delavau's NOL carryovers. However, petitioner and respondent disagree about the consequences of the application of section 381 with respect to the deemed liquidation of Delavau. Petitioner claims that Delavau's tax attributes are treated exactly the same as HBM's own, while respondent argues that they must be accounted for separately.[5]

In a distribution to which section 332 applies, the acquiring corporation succeeds to and takes into account, as of the close of the day of the distribution, the NOL carryovers of the distributor corporation, subject to the conditions and limitations of section 381(b) and (c). § 381(a). These include limitations on carrying the NOL carryovers, *see* § 381(c), including requiring the distributor corporation's NOL carryovers to be prorated between the pre- and post-distribution portions of the tax year in which the distribution occurs, *see* § 381(c)(1)(B). Regulations under section 381 contemplate that distributor corporation carryovers are to be integrated with carryovers of the acquiring corporation for purposes of determining the taxable income of the acquiring corporation for tax years ending after the date of distribution, subject to the conditions and limitations of section 381(c)(1), section 382, and the remaining regulations. *See* Treas. Reg. § 1.381(c)(1)-1(a). The regulations also provide that determining the taxable income of an acquiring corporation for "any taxable year ending after the date of distribution . . . involves the use of carryovers of the distributor . . . corporation, and of carryovers and carrybacks of the acquiring corporation." *Id.* para. (e)(1). And they illustrate consideration of the acquiring corporation's and distributor corporation's NOL carryovers separately in years after the first tax year following the distribution. *See, e.g., id.* subpara. (4). Accordingly, they contradict petitioner's assertion that the regulatory tracking rules are for purposes of implementing the proration rule of section 381(c)(1)(B) and the implication that they are otherwise irrelevant.

In support of its assertion that the tax items of a distributor corporation inherited by an acquiring corporation are treated as

_____

[5] Respondent also notes that as a result of the application of section 1371(b)(2), HBM had no NOL carryovers on June 30, 2018, that could be carried over to the subsequent year.

indistinguishable from the acquiring corporation's own tax items, petitioner relies on Revenue Ruling 75-223, 1975-1 C.B. 109, Revenue Ruling 77-376, 1977-2 C.B. 107, and *Dover Corp. & Subsidiaries v. Commissioner*, 122 T.C. 324 (2004). However, these all address the question of whether an acquiring corporation succeeds to the business history of its liquidated subsidiary, which is not addressed by the statute or regulations, *see Dover Corp.*, 122 T.C. at 349, and not the question of whether the NOL carryovers of the combined entities are tracked separately by the acquiring corporation. And the broad reading that petitioner suggests would override clear statutory text in section 381(c).[6] Accordingly, this Court does not agree that the Delavau NOL carryovers became indistinguishable from HBM NOL carryovers.

B. *Meaning of "Predecessor" and "Successor"*

Treasury Regulation § 1.1502-1(f)(4) provides: "The term *predecessor* means a transferor or distributor of assets to a member (the successor) in a transaction . . . [t]o which section 381(a) applies." Delavau was a distributor of assets to HBM, a member of the HBM group, in a section 332 liquidation, a transaction to which section 381(a) applies. Therefore, Delavau would be a predecessor, and HBM a successor, under a straightforward reading of Treasury Regulation § 1.1502-1(f)(4).

However, petitioner argues that HBM is not a successor of Delavau within the meaning of Treasury Regulation § 1.1502-1(f)(4) because HBM was not a member of the HBM group at the time of the section 381 transaction. In support thereof, petitioner asserts that "[t]he definitions in Treas. Reg. § 1.1502-1(f)(4) must be applied as of the time of the relevant transaction." According to petitioner, this "temporal distinction" is "critical to the regulatory framework"; however, petitioner cites to no authority and provides little explanation to support it.

---

[6] For example, Revenue Ruling 75-223, 1975-1 C.B. at 110, notes, in explaining why an acquiring corporation will be treated as having engaged in the business activities of its distributing subsidiary, that "[s]ection 381, in effect, integrates the past business results of the subsidiary (as represented by its earnings and profits, net operating loss carryovers, etc.) with those of the parent corporation." If, however, the revenue ruling were read as broadly as petitioner would read it in the context of NOLs, to require integration of the earnings and profits of the corporations, it would override section 381(c)(2)(B) (and the rules in Treasury Regulation § 1.381(c)(2)-1 implementing it).

The Court interprets regulations as it interprets statutes, starting with their plain meaning and looking at the text and design of the regulation as a whole. *See AptarGroup Inc. v. Commissioner*, 158 T.C. 110, 116 (2022); *Austin v. Commissioner*, 141 T.C. 551, 563 (2013). There is no textual basis in Treasury Regulation § 1.1502-1(f)(4) for petitioner's position. And, to the contrary, other definitions in the same regulation reflect that definitions are generally to be applied as of the tax year for which they are being taken into account. *See, e.g.*, Treas. Reg. § 1.1502-1(h) (explicitly referring to the tax year); *id.* paras. (a), (b), and (c) (implicitly requiring measurement for the tax year). They also indicate explicitly when the definition requires application at a different point. *See, e.g.*, *id.* para. (f)(2)(i) (referring to a corporation that is the common parent for a particular year); *id.* para. (g)(3)(i) (referring to corporations that were members as of a specific prior point). And, as petitioner acknowledges, the SRLY subgroup rules on which it seeks to rely are formulated consistent with entities' status as predecessors and successors being determined without regard to their group membership at the time of the relevant transaction. *See* Treas. Reg. § 1.1502-21(f)(2)(ii).[7]

Given that Treasury Regulation § 1.1502-1(f)(4) does not limit successors to corporations that were members at the time of a relevant transaction, it requires only that a corporation be a member for the relevant consolidated return year. Consistent with that, Treasury explained: "The definition of predecessor is provided in § 1.1502-1(f)(4). In general, a predecessor is any transferor of assets in a section 381(a) transaction." T.D. 8823, 1999-2 C.B. 34, 38, 64 Fed. Reg. 36092, 36096 (July 2, 1999). Not only does the regulatory text not support petitioner's

---

[7] The regulations prescribe rules applicable to certain successors, which continue to apply even if an entity designated as a successor as a result of a transaction ceases to be a member of the group of which it was a member when the transaction occurred. The regulations illustrate the application of those rules in an example in which a corporation, T1, is a successor to another corporation, T, because of a transaction that occurred when both were members of the P group. *See* Treas. Reg. § 1.1502-21(c)(2)(viii)(A)(*1*), (*6*). (Citations are to the regulations in effect for the 2021 tax year.) The example continues to apply the rules applicable to successors to T1 after T1 becomes a member of the M group. *See id.* subdiv. (viii)(A)(*7*). If, as petitioner claims, successor status depends on being a "member" at the time of the relevant transaction, T1 would have lost its successor status when it moved from the P group to the M group. After all, "member" is defined as "a corporation . . . that is included in the group," Treas. Reg. § 1.1502-1(b), and "the group" is the corporation's *current* group, *see id.* paras. (a), (h). T1 was not a member of the M group when the relevant transaction occurred, so it was not a member of "the group." And yet the regulations make clear that T1 retained its successor status when it moved to the M group.

proposed gloss, but it actually contradicts it. Accordingly, this Court holds that Delavau is a predecessor, and HBM is a successor, within the meaning of Treasury Regulation § 1.1502-1(f)(4).

### C. *Applicability of the Lonely Parent Rule*

As noted *supra* Discussion Part II, under the lonely parent rule, an SRLY does not include an SRY of the common parent for the consolidated return year to which the tax attribute is to be carried. Treas. Reg. § 1.1502-1(f)(2)(i). However, the wording and structure of the consolidated return group regulations make clear that the lonely parent rule does not apply to an SRY of a predecessor of the common parent. *Cf. AptarGroup Inc.*, 158 T.C. at 116; *Austin*, 141 T.C. at 563. The lonely parent rule is the first of three exceptions to the definition of an SRLY. While it conspicuously fails to mention predecessors, the second and third exceptions exclude the SRY of a member that meets certain conditions and a predecessor of any member that meets the same conditions. *See* Treas. Reg. § 1.1502-1(f)(2)(ii) and (iii). These exceptions would overlap if the reference to a member encompassed a reference to a predecessor. Likewise, if a reference to a member entailed a reference to the predecessor of a member, it would be unnecessary for the general definition of SRLY to refer to both a member and a predecessor of a member. *See id.* subpara. (1). Moreover, Treasury Regulation § 1.1502-1 does not contain a rule like that in Treasury Regulation § 1.1502-21(f)(1) that generally includes predecessors and successors of a member in a reference to the member, supporting the opposite conclusion.

The Delavau NOLs all arose in tax years of Delavau for which it filed a separate return, i.e., its SRYs. *See* Treas. Reg. § 1.1502-1(e). Because it is a predecessor of HBM, its SRYs constitute SRLYs under the general SRLY definition. *See id.* para. (f)(1). None of the three SRLY exceptions applies with respect to the Delavau SRYs because Delavau is a predecessor that was never a member of the group. *See id.* subpara. (2). Accordingly, the Delavau SRYs are SRLYs.[8]

---

[8] This conclusion is consistent with the following analysis of the applicable rules by the U.S. Court of Appeals for the Sixth Circuit:

> Where a member of the group is the successor corporation in a 381 transaction, any net operating losses of the predecessor corporation are considered to have occurred in a SRLY if the predecessor was not a member of the group for each day of such year. The lonely parent rule does not apply in these situations,

### D.    *Applicability of the SRLY Subgroup Rules*

Petitioner asserts, alternatively, that if HBM is treated as a successor to Delavau, HBM and the other Founding Members are part of an SRLY subgroup. As a result, petitioner says, the SRLY subgroup rules allow HBM to apply the Delavau NOLs to offset income of the other Founding Members. This Court disagrees because the Founding Members do not constitute an SRLY subgroup.

In the case of a carryover, an SRLY subgroup is composed of members who joined the affiliated group at the same time and were members of the same former group. *See* Treas. Reg. § 1.1502-21(c)(2)(i). The term "former group" refers to another affiliated group. *See* Treas. Reg. §§ 1.1502-21(c)(2), 1.1502-1(a). The Founding Members were not part of any prior affiliated group. Until the current HBM group was formed, HBM was, and had always been, an S corporation. The other Founding Members were QSSSs immediately before the HBM group's formation and therefore disregarded as separate from HBM under section 1361(b)(3)(A). An S corporation cannot be a member of an affiliated group. *See* § 1504(b)(6). Because there was no former group, the Founding Members cannot constitute an SRLY subgroup.

Petitioner argues that although the Founding Members were not technically part of an affiliated group before the current HBM group was formed, the SRLY subgroup rules treat them as if they were. Specifically, petitioner claims that Treasury Regulation § 1.1502-21(c)(2) treats corporations as an SRLY subgroup if they "were commonly controlled in a manner that would have constituted an affiliated group but for their disregarded status." The underlying purpose of the SRLY subgroup rules, according to petitioner, is to "aggregate the income of related entities that enter the group together." Petitioner argues the Founding Members were affiliated as a matter of "economic reality" because they were "under the common control and ownership of HBM." Thus, petitioner claims, they should be treated as

---

and the loss carryovers are subject to the SRLY restrictions, despite the fact that the common parent may be the successor corporation in the 381 transaction. . . . Thus, the preacquisition years of the acquiring corporation may be SRLY's despite the fact that the loss carryovers were actually incurred by the transferor corporation.

*Wolter Constr. Co. v. Commissioner*, 634 F.2d 1029, 1043–44 (6th Cir. 1980) (footnote omitted), *aff'g* 68 T.C. 39 (1977).

an SRLY subgroup in order to serve the purpose of the SRLY subgroup rules.

Unfortunately for petitioner, this argument cannot overcome its complete lack of textual basis. As the Court explained in considering a similar argument that a taxpayer "disingenuously" made about the purpose of the consolidated return group rules in seeking to avoid the consequences of the SRLY rules: "We are unwilling to read into the regulations an exception to the separate return limitation year solely on the belief that such an exception was inadvertently omitted. . . . [A]ny corporation seeking to deduct losses of another corporation from past years can do so only upon the authority of a specific provision." *Wolter Constr. Co.*, 68 T.C. at 44–45.

Furthermore, petitioner misunderstands the purpose of the SRLY subgroup rules. Their purpose is not to aggregate income from "related" entities in general; it is to preserve aggregation for continuously affiliated corporations. The SRLY subgroup rules provide a narrow exception to the SRLY limitation designed to preserve "single entity" treatment for members that move together from one affiliated group to another. *See* Consolidated Returns—Limitations on the Use of Certain Losses, Deductions and Credits, 56 Fed. Reg. 4228, 4229–30 (Feb. 4, 1991). If not for the SRLY subgroup rules, an NOL carryover carried from the former group by one member would no longer be permitted to offset the income of the other member, even though the two members had been continuously affiliated with each other. *Id.* at 4229. However, continuous affiliation is a key requirement. Thus, treating the Founding Members as constituting an SRLY subgroup would not be consistent with the limited purpose of the SRLY subgroup rules, in addition to being proscribed by the text of those rules.

E.    *Application of the SRLY NOL Limitation*

As noted *supra* Discussion Part II, a consolidated group is generally permitted CNOL deductions on the basis of NOL carryovers of a member (including potentially the member's predecessors and successors) arising in an SRLY only to the extent of the group's consolidated taxable income attributable to that member. *See* Treas. Reg. § 1.1502-21(a)(1), (c)(1)(i), (f)(1). Because HBM had no taxable income on a separate entity basis for its short tax year ending December 31, 2018, through the 2021 tax year, its NOL carryovers arising in an SRLY cannot be taken into account in the HBM group's CNOL deductions for the years at issue. And because the Founding Members

do not constitute an SRLY subgroup, their taxable income cannot be taken into account in determining the amount of NOL carryovers included in the CNOL deduction. Accordingly, because the Delavau NOL carryovers arose in an SRLY, they cannot be included in the HBM group's CNOL deductions for the years at issue. Therefore, the CNOL deductions claimed by the HBM group for the years at issue are not allowed.

V.    *Conclusion*

For the foregoing reasons, this Court will grant respondent's Motion for Partial Summary Judgment and deny petitioner's Motion. This Court has considered all of the arguments made by the parties and, to the extent they are not addressed herein, finds them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*